IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. SANTOS RODRIGUEZ, | ) ) ) ) | |
| Petitioner, | ) ) | 13 C 3404 |
| v. | ) ) | Judge Virginia M. Kendall |
| Richard Harrington, Warden, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Santos Rodriguez filed a petition for writ of habeas corpus on May 6, 2013. Incarcerated at Pontiac Correctional Center, Rodriguez is serving a fifty-one year sentence for murder and attempted murder. Rodriguez claims that he received ineffective assistance of counsel in connection with his waiver of his right to a jury trial and that the State of Illinois denied him due process in connection with his self-defense claim. This Court denies Rodriguez's petition.

## BACKGROUND

Rodriguez and Jose Ortiz were sitting in a parked vehicle talking and rolling a marijuana cigarette the night of November 13, 2005.[1] Two men, Victor Aguirre and Fabian Pacheco, approached the parked vehicle and confronted Ortiz. The confrontation concerned a twenty-dollar bag of white powder that Ortiz sold to Aguirre earlier that day. Ortiz told Aguirre that it was cocaine but Aguirre thought the powder was something other than cocaine. Aguirre

---

[1] This Court presumes the facts established by the state court are true unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254; *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008). This Court takes the facts referenced herein from Exhibit D to Dkt. No. 15, which is an order of the Appellate Court of Illinois, First Judicial District.

1

demanded that Ortiz make amends but Ortiz refused. At some point, Ortiz told Aguirre that Rodriguez had a gun. Rodriguez claims that Aguirre indicated that he or someone with him also had a gun. A third man, Eddie Reese, was behind the parked vehicle standing in a gangway. Reese threw a bicycle that hit the parked vehicle. Rodriguez got out of the vehicle to see what hit the parked vehicle. Rodriguez saw Reese and claims that he saw Reese reaching into his waistband. Rodriguez fired two shots at Reese, who later died from a gunshot wound to the chest. Rodriguez then fired three shots at a fleeing Pacheco. The shots hit Pacheco in his left hand, left arm, and his lower back.

Prior to trial, Rodriguez's defense counsel moved to suppress statements Rodriguez made to police officers during a lengthy investigation. The trial court granted Rodriguez's motion in part. At trial, Defense Counsel argued that the trial court should find Rodriguez guilty of second-degree murder because the evidence showed that he had a subjective albeit unreasonable belief that his life was in danger. After hearing from witnesses who testified that Aguirre, Pacheco, and Reese did not have or indicate that they had guns, the trial court rejected this argument.

After trial, Rodriguez moved for a new trial based on ineffective assistance of counsel. Rodriguez argued that Defense Counsel convinced him to forgo a jury trial because Defense Counsel believed the trial judge would find Rodriguez guilty of second-degree murder. Defense Counsel testified at a post-trial hearing concerning the events that led to Rodriguez's jury trial waiver. Defense Counsel explained that his interactions with the trial court, to include the trial court's favorable ruling on Rodriguez's motion to suppress, led him to believe that the trial judge would find Rodriguez guilty of second-degree murder. Defense Counsel explained the differences between a bench trial and a jury trial to Rodriguez and Rodriguez indicated a preference for a jury trial several times. But Defense Counsel ultimately convinced Rodriguez to

proceed with a bench trial and in May 2007 the trial court scheduled a bench trial for July 2007. The trial court then reset the bench trial to August 2007. Defense Counsel testified that between May and August 2007 Rodriguez did not ask for a jury trial again until after the trial began. Indeed, Rodriguez signed a jury waiver immediately before trial. The trial court admonished Rodriguez about his right to a jury trial and confirmed that no one threatened, forced, or made him any promises to sign the waiver form before Rodriguez signed the jury waiver.

## **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs petitions for writs of habeas corpus filed after April 24, 1996. *Benefiel v. Davis*, 357 F.3d 655, 659 (7th Cir. 2004). Under the AEDPA, a federal district court may issue a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). For claims adjudicated on the merits in state court proceedings, the district court may issue a writ of habeas corpus only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *Cheeks v. Gaetz*, 571 F.3d 680, 684 (7th Cir. 2009). Further, the petitioner "bears the burden of showing that the state court's finding of fact or its application of federal law was not only erroneous, but unreasonable." *Smith v. Grams*, 565 F.3d 1037, 1043 (7th Cir. 2009).

## DISCUSSION

**I.    Defense Counsel did not offer ineffective assistance of counsel when he recommended that Rodriguez waive his right to a jury trial.**

Rodriguez's claim that ineffective assistance of counsel led him to waive his right to a jury trial implicates the Sixth Amendment in two respects. First, Rodriguez's claim implicates whether Defense Counsel's trial strategy was reasonable. Second, Rodriguez's claim implicates whether his waiver was knowing and intelligent.

The Sixth Amendment provides criminal defendants with the right to effective counsel. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). Courts presume that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Lathrop*, 634 F.3d 931, 937 (7th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To rebut this presumption, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that, but for his counsel's performance, the result of the proceeding would have been different. *Lathrop*, 634 F.3d at 937. "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Counsel can advise a defendant to waive a jury trial as part of a reasonable trial strategy. *See Milone v. Camp*, 22 F.3d 693, 704 (7th Cir. 1994) (concern that jury may not understand expert testimony made counsel's recommendation to waive right to a jury trial reasonable). Here, the Appellate Court of Illinois concluded that Defense Counsel's reasoned judgment led him to advise Rodriguez to waive his right to a jury trial. Defense Counsel believed that the trial judge was more likely than a jury to find Rodriguez guilty of second-degree murder. Defense Counsel

based his belief on his discussions with the trial judge and a favorable decision on a motion to suppress. Defense Counsel persisted in his belief even though the state maintained that this was a first-degree murder case and the trial judge never stated that he would find Rodriguez guilty of second-degree murder instead of first-degree murder.

Yet the record does not indicate that the trial judge foreclosed second-degree murder. And Rodriguez has not presented any evidence to that effect. Consequently, either the trial judge or the jury could have returned a verdict of second-degree murder. Defense Counsel's experience and assessment of the situation led him to believe that the trial judge was more likely to do so. This Court will not question Defense Counsel's choice. *See United States v. Moutry*, 46 F.3d 598, 605 (7th Cir. 1995) ("We will not question counsel's choices among an array of reasonable trial strategies.").

A jury trial is a constitutional right that a defendant may waive in favor of a bench trial. *Milone*, 22 F.3d at 704. A defendant's waiver of a jury trial must be voluntary and knowing. *Id.* On review, a defendant must show that his waiver was prima facie invalid. *Id.* Here, Rodriguez has not shown that his waiver of his right to a jury trial was invalid. The trial court admonished Rodriguez about his right to a jury trial and confirmed that no one threatened, forced, or made him any promises to sign the waiver form. Although Rodriguez shared his concerns with Defense Counsel, Rodriguez never shared any reservations he had with the trial court. Moreover, he accepted Defense Counsel's proposed trial strategy. It was not until after the trial started that Rodriguez claims he changed his mind about his waiver of his right to a jury trial. Just because Rodriguez later changed his mind does not mean that his waiver of his right to a jury trial was not knowing and intelligent when he made it. Consequently, Rodriguez has not made a prima facie showing that his waiver of his right to a jury trial was invalid. For these reasons, this Court

5

finds that Rodriguez knowingly and voluntarily waived his right to a jury trial. In addition, this Court finds that the state courts correctly applied federal law when evaluating Rodriguez's Sixth Amendment claims.

Moreover, Rodriguez has not shown a reasonable probability that the result of his trial would have been different had Defense Counsel attempted to withdraw Rodriguez's jury trial waiver. As a threshold matter, the trial court did not have to allow Rodriguez to withdraw his waiver of a jury trial. *See Sinistaj v. Burt*, 66 F.3d 804, 808 (6th Cir. 1995) ("But we can conceive of no situation in which a federal judicial determination on habeas collateral review that a state court, as a matter of general law, abused its discretion in denying the [jury waiver] withdrawal motion is therefore a violation of the federal Constitution."). This is particularly true when the motion to withdraw is untimely. *See Zemunski v. Kenney*, 984 F.2d 953, 954 (8th Cir. 1992) ("If the motion to withdraw is untimely, however, a trial court does not deprive the defendant of the right to a jury trial by denying the motion."); *see also United States v. Holmen*, 586 F.2d 322, 323-24 (4th Cir. 1978) (district court did not abuse discretion when it denied motion to withdraw waiver of jury trial on the eve of trial). Here, Rodriguez does not dispute that he did not ask to withdraw his jury trial waiver until his bench trial was underway. (Dkt. No. 1 at 5B.) Consequently, it may have been too late for Rodriguez to withdraw his waiver. *See United States v. Mortensen*, 860 F.2d 948, 950-51 (9th Cir. 1988) (defendant can withdraw waiver if done in a timely manner).

Even if the trial court would have allowed Rodriguez to withdraw his jury trial waiver, Rodriguez has not shown that a jury would have reached a different verdict than the trial court. Several witnesses testified that Rodriguez shot two unarmed men. Rodriguez claims that he saw one of the two men reaching into his waistband for a gun. No other witness or evidence

corroborates Rodriguez's claim. As such, Rodriguez has not shown a reasonable probability that a jury would have found him guilty of second-degree murder.

**II.      The record supports Rodriguez's first-degree murder conviction.**

Rodriguez claims that it was objectively unreasonable for the state courts to reject Rodriguez's imperfect self-defense argument just because there was no evidence that either of Rodriguez's victims had a weapon. The state argues that Rodriguez's claim is not cognizable because it does not implicate any federal constitutional right. This Court disagrees because "a state prisoner is entitled to habeas corpus relief if a federal judge finds that 'upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *McDaniel v. Brown*, 130 S. Ct. 665, 666 (2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). That is the essence of Rodriguez's claim—he claims that he proved by a preponderance of the evidence that he had an unreasonable belief that he had to use deadly force to protect himself and, therefore, no rational trier of fact could have found him guilty of first-degree murder.

Under Illinois law, whether self-defense justifies a killing is a question of fact. *People v. Ornelas*, 295 Ill. App. 3d 1037, 1049 (Ill. App. Ct. 1998). "Insofar as possible the habeas or appellate court shuns resolving credibility and weighing the evidence." *Rosa v. Peters*, 36 F.3d 625, 632 (7th Cir. 1994). Further, a reviewing court faced with conflicting inferences must presume that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. *McDaniel*, 130 S. Ct. at 673. Here, Rodriguez testified to his belief that Reese reached into his waistband for a gun. Other witnesses, however, testified that Reese was unarmed. Police officers did not find any weapons at the scene. In view of the verdict, the trial court must have rejected Rodriguez's version of events. *See Rosa*, 36 F.3d at 632 ("the jury must

have found Rosa's version incredible in large part because it rejected the claim that he acted in self-defense.") The remaining evidence—Rodriguez does not dispute that he shot and killed Reese—was sufficient to find Rodriguez guilty of first-degree murder beyond a reasonable doubt. Therefore, this Court rejects Rodriguez's claim that no rational trier of fact could have found him guilty of first-degree murder. In addition, this Court finds that the state courts correctly applied federal law when evaluating the sufficiency of the evidence against Rodriguez.

## III. A certificate of appealability is not appropriate.

Unless a court issues a certificate of appealability, an appeal may not be taken from a final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A). "Only if the applicant has made a substantial showing of the denial of a constitutional right" can a court issue the certificate. 28 U.S.C. § 2253(c)(2). When a court dismisses a petition on the merits, obtaining a certificate of appealability requires a petitioner to demonstrate that reasonable jurists would find this Court's assessment of the constitutional claims either debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003). Rodriguez has not made such a showing here because he has not shown Defense Counsel's advice to have been deficient. This is particularly true in view of the deference afforded to counsel in formulating a trial strategy. Moreover, Rodriguez has not shown that he suffered any prejudice due to the advice he received from counsel. Therefore, no reasonable jurist could conclude that this Court erred in dismissing Rodriguez's petition. Accordingly, this Court will not issue a certificate of appealability.

## **CONCLUSION**

For the reasons stated herein, this Court denies Rodriguez's petition for writ of habeas corpus.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 22, 2013

9